0 8 3 1 8 5 People v. Fred Farmer Both sides. You. For the epilogue. Jessica Rizzo, Office of the State Appellate Defender, on behalf of Freddie Farmer. Rizzo. Very good, Ms. Rizzo. State. Good morning, Your Honors. My name is Assistant State's Attorney Jessica Bargeman, and I'm here representing the people of the state of Illinois. Your name is not on the brief, right? That's correct, Your Honor. Not a problem. Okay. Each side has 15 minutes. As you can see from the last case, we don't really look at our watches here, which is unfortunate sometimes. I get yelled at, but it does behoove you to get to your strongest point first, and I can assure you we've read the briefs. Hopefully you picked up on that. So anytime you're ready, Ms. Rizzo. May it please the Court. Again, Jessica Rizzo on behalf of Freddie Farmer. I plan to focus my argument today on Issue 1, the constitutionality of the false personation of a parent statute. I'll be happy to take questions on Issue 2 as well. Every day in the state, countless people unknowingly violate the false personation of a parent or guardian statute, which is a strict liability statute that does not require a criminal purpose. And the statute's violated even though no child is in danger in many of these situations. And, in fact, the child does not even need to be present for the statute to be violated. In an overbreadth challenge like this one that has to do with the First Amendment, the right to free speech, the statute's not presumed constitutional, and the state has the burden of showing that the statute is narrowly tailored to the government's purpose, and here that it does not restrict innocent speech. The innocent speech needs to be protected. The Illinois Supreme Court recently reiterated in People v. Madrigal that, I mean innocent conduct, I'm sorry, that was not a free speech case, but they did address the identity theft statute in that case, and found that it was unconstitutional because it, a portion of it was unconstitutional because it included a large amount of innocent conduct. Likewise here, this statute has the potential of punishing a great deal of innocent conduct. It only requires that a person make a false representation that they're related to the child, to a child, to a set group of people. Again, it doesn't require that there be any criminal purpose or any intent to harm the child, and again, the child does not even need to be there. Do you think, counsel, that this statute has any legitimate application? I think that it has, the purpose of the statute likely is to protect children. However, I don't think it's narrowly tailored to that purpose. Had the statute been drawn differently, if it had been drawn in such a way that they included a few more words for a criminal purpose, that's the Luring statute, for example, it's not just enticing a child with speech, it's for a criminal purpose. Had the statute added for a criminal purpose, it would then be constitutional. So in your position, in order to be constitutional, they've got to include that language in the statute? That's one way that they could have made it constitutional. They also, perhaps they could have included something like, to cover some of the examples that I had given in my briefs, maybe with the consent of a parent. For example, someone who sort of casually calls a child their niece when they're not related. So as long as the parents are okay, that would be okay and that would be fine. But for the vast majority of these things, we would need some language to add a criminal purpose, a criminal intent. Something that makes the, not just language, it's language to do something else. Many of the cases that the state cited to in their brief, in terms of aiding children or preventing harm to children, all include something like that, you know, for a criminal purpose or, you know, the act in itself has some harm to a child. Things like child pornography, things like that. Here, there's many examples that I put in my brief, but I can think of other examples where the child would not be harmed in any way. Just by saying, hey, to someone, this is my niece or this is my cousin. An example, for example of, you know, the child not even needing to be there. Let's say I post a photo of a child of a best friend of mine. I consider myself to be her aunt. I post this on my Facebook page and say, proud auntie Jessica. Well, I have friends that are coworkers like myself, are public employees. So when they see that post, that makes me sad. I have violated that statute by innocently, lovingly calling this child my niece. And it's situations like this that we really want to prevent. We don't, you know, granted there are situations where someone with a criminal purpose would try and claim to be a relative of a child. Well, like somebody walking with a 12-year-old dressed like a prostitute at 63rd and Halstead when she's a runaway and saying, yeah, this is my niece or my cousin. Well, I mean, it's important to know we don't really know what was going on. We really don't. Well, we're not morons. Yes, everybody does. But besides that, so going back, is that the standard, though, Ms. Ariso, for us to find over-breath, that you can imagine some instances, actually many instances, where it wouldn't be harmful than, indeed, as you say, you go on Facebook and you call somebody your niece and they're really not your niece. Is that the standard for over-breath? Well, the standard from the U.S. Supreme Court is whether or not a substantial number of the applications are unconstitutional. And I think that because you can think of it's not just one or two examples that you could come up with. It's many examples that I think are easily to come up with situations where people would say that they're related to someone that they're not related to. And so that's the standard, whether it's a substantial number. I mean, this is in contrast to the false personation of a police officer statute, which is constitutional, because it's difficult there to find a substantial number of instances where someone is going to be claiming to be a police officer without some sort of harm to society, some sort of intent to do some kind of harm. Here, there's just so many innocent ways that you could claim to be a relative of a child. So if the law does have some legitimate application, then why is it wrong for the state to argue for a limiting construction? I'm sorry, can you say that again? Why is it wrong for the state to argue in this case that there should be a limiting construction? And we should look at the over-breath, but we should look at the fact that this individual did try to deceive the police officer. Well, I mean, in any case, it requires a falsity. But being false, saying something false or lying is in itself a crime. That's why the statute is overly broad. You say something that's untruthful, even to a police officer, you still have to have an intent to hide up, cover something up, or prevent someone from being arrested. Would you not think in this case that he was trying to cover something up? The fact that this young girl was a runaway and the young girl was with him? And by deceiving the police officer, he was trying to do that. Then when the officer said to him, I believe, well, let's go down to the station and try to figure this out. And he said, heck with that, I'm getting out of here. And then he runs away and then he's caught by the officer. Well, again, we don't know if he just ran into this child right before the police came up. We don't know if the child was a runaway and didn't want to go back home. And so she told the guy, hey, tell them you're related to me so that they don't take me down to the station. We have no idea on the facts of this case what happened. What difference would it make if the child said, go ahead and lie for me? Well, then he's not trying to harm a child. Okay, I would beg to differ with that. Now, you cite the case Madrigal in your reply brief. How Madrigal applies here? Well, it's similar. I mean, it is different because that's a different standard. It was a substantive process challenge. So they were only going based on whether the statute was reasonable. Here, it's even a higher standard. And there, the court addressed specific innocent conduct that their concern would apply in that statute. Things like examples that I have given that the state suggested would never be arrested for. Examples like someone looking up their friend's marathon time on the Internet technically violated the law. Someone doing a Google search on someone technically violated the law. And these are examples just like I've cited. It's truly innocent conduct that violates this law with no criminal purpose and no criminal intent whatsoever. And it's just everyday things that people do. And the Illinois Supreme Court found that that punished too much potential innocent conduct. Are there any further questions? You have plenty of time for reply. Ms. Parchman, State. May it please the Court, Counsel. Again, my name is Assistant State's Attorney Jessica Parchman and I'm representing the people of Illinois. Your Honors, on June 1, 2002, the defendant was found in the company of a 13-year-old runaway minor at an open shopping mall on 63rd Street in Halstead. The police officer was tipped off that that minor was a featured runaway on Crime Watch. Counsel, I know you're new and I don't want to jump down your throat. But we've read the briefs. One fact you brought up is interesting. So this occurs in 2002 and yet it's here in front of us in 2011. So what happened? What occurred for the nine years from the time this crime allegedly occurred to the time we see it today? Certainly. I would just like to note that this case was originally assigned to a different Assistant State's Attorney. But my understanding from reading the brief was that the defendant had filed, I believe, a post-trial motion. And he was trying to get the record that entire time. And the court reporter had passed away. And so that was the reason for the extended length between then and now. I thought it was conceivable. It took eight years to do that. I was a little surprised. I'd first like to note that opposing counsel says that the presumption, there's no presumption of constitutionality for statutes that involved fundamental rights. However, she cites New York Times v. Salerno. However, if you look throughout that case, there's absolutely no mention that says that statutes should not be presumed constitutional. Moreover, opposing counsel does not include a pin site for that. So as we ask this court to follow, People v. Greco, which is a 2003 Illinois State Supreme Court case, this is still good law that says all statutes are presumed to be constitutional, whether or not they involve a First Amendment right or otherwise. Specifically in this case, the defendant poses a over breadth challenge. And he states that this statute is over broad. Now, the test for that is that a statute must be substantially over broad, and that the number of unconstitutional applications must be substantial in relation to the legitimate scope of the statute. And the legitimate scope of the statute involves situations where there's an adult who has falsely represented himself to be the minor's parent, legal guardian, or relative in order to gain access and possession of that child. The statute grants law enforcement personnel the opportunity to step in before further harm may be inflicted on the child. And legitimate reach includes situations where a person has tried to kidnap a child from school by pretending to be their relative, child abductor has been stopped by police, these are persons who are soliciting underage prostitutes, they are internet predators who are luring in unsuspecting minors by posing as fellow youths and arranging meetings, and there are situations such as the one before you today where there's individuals who prey on minor runaways. Your Honors, the opposing counsel stated that there is no mens rea in this case and that just anyone can violate the statute in their everyday lives. However, the legislature specifically put in the term falsely to show mens rea. Falsely in people v. theons was said to mean tending to deceive or mislead, being deceptive. And it's clear here that the legislature used the term falsely to mean that the speaker is making his representation of relationship with the intent to deceive. Your Honors, there's also further limitations that make the statute narrowly tailored to serve the compelling state interest of protecting society's minors. And that is that it also limits that the representation must be of a minor child. So it does not involve a situation where there's two adults referring to each other in the familiar colloquial sense as cousins or cuz. Moreover, the other limitation is it limits the person to whom the false representation is made. And it specifically delineates three specific types of groups, that being a public employee, a public official, or a school employee or administrator. In other words, positions where those persons are in positions of trust and would be capable of helping the children. Now, Your Honor, in people v. Lewis, this court has stated that the public policy mandates that the law be able to step in where danger becomes manifest that a criminal act is eminent. And there's none more important than situations that are involving children. Your Honors, this statute is similar to Illinois' false personation of a police officer statute, which was affirmed in people v. Theons. The court rejected the defendant's over-breath argument. In that case, the statute was drawn much more broadly than the instant case. That statute said that a person commits false personation of a peace officer when he knowingly and falsely represents himself to be a peace officer. There's no limits on who you're speaking to or any more than that. The statute has absolutely no limits. It criminalizes any statement made by any individual to any person in which that individual represents himself to be a police officer. However, the statute we have before us today is very narrowly tailored, and it only criminalizes a false representation of a minor to a very specific set of people. And that being public employees, public officials, or school employees. Moreover, this statute has been passed in order to serve the compelling interest of protecting society's most vulnerable citizens, its minors. And as the Supreme Court noted in Globe Newspaper Company v. Superior Court, the state's interest in safeguarding the physical and psychological well-being of a minor is both legitimate and compelling. There's long-established precedent that shows that the United States Supreme Court and Illinois courts have sustained legislation that's aimed at protecting the physical and emotional well-being of youth, even when those situations have had First Amendment implications. The most recent in Illinois have been People v. Williams and People v. Smith, in which case there were over-breath challenges to certain statutes involving children, one being indecent solicitation of a child and another being a child abduction act. And the courts have said in both instances that the state's substantial interest in protecting children has allowed the broad powers to avert such potentially dangerous situations and that it surpasses any potentially unlawful applications. Your Honors, even if there is an instance where there's an innocent application of this statute, again, the over-breath test is that it must substantially outweigh the constitutional applications and that does not occur in this case. Your Honors, there's also additionally, the courts have stated in fervor, that if there's a situation where there is an innocent conduct, that the court has an opportunity to assess that particular factual situation on a case-by-case basis. That does not change the burden that is on the defendant here today to show that the statute is not overly broad. Your Honors, the false personation of a parent or guardian statute is very narrowly tailored and it's to serve the compelling state interest of protecting minors. While according to the defendant, some protected speech may be constricted by the statute, the scope of that impermissible restriction is far less than the legitimate reach of the statute. Your Honors, for the reasons said today and those stated in the People's Brief, we respectfully request that you affirm the defendant's conviction for false personation of a parent or legal guardian. Thank you. Thank you, Your Honors. Ms. Arisa. First of all, I would just like to note that I also cited in my reply brief to Heller v. Doe, which does state that the statute here should not be presumed constitutional. I would just like to point out that even though, it's no question that wanting to protect children from harm is a serious issue. I mean, no one is going to say that we don't want to protect children from harm. The issue here is that this statute doesn't go far enough in that goal. It is not narrowly constricted enough to that goal. Just because there are examples that the state points out of situations in which the statute would punish criminal conduct, that doesn't change the fact that it also would potentially punish lots of innocent conduct. She also brought up the issue about how the word falsely is in the statute. However, there's points to the Theonis case. There also, though, there was a knowingly requirement that's not here. It's just falsely. So I can think of 100 innocent ways in which I could say something that's not true, that's not criminal, and should not be criminal. And yet, this statute would punish those instances. Also, I won't get into it completely because I do distinguish them in my reply brief, but the cases the state cites regarding other instances of child safety, harm to children, all of those things required specific criminal activity, criminal purpose, or the law themselves was prohibiting something criminal in nature, such as child pornography and things like that. Regarding the whether or not, as she suggested, if it's such a small, she's saying it's such a small amount of cases that it could be potentially innocent conduct, then we should just work at those on a case-by-case basis. Well, if the statute is unconstitutional on its face, it should be struck down. We shouldn't leave it to having someone be arrested and go to court on a crime and then have to try and weasel out of it by saying that the statute doesn't mean that, specifically in this case when the statute doesn't say anything about needing a criminal purpose at all. And it's strict liability, so there's no defense to the statute at all. If you made this statement and it's untrue and you say it to one of these people, you violated the statute. Also, two cases that she cites, too, both Ferber and Smith, those statutes are quite different. In both of those cases, it's a situation where there would be a very narrow amount of things that could be innocent conduct. We're talking about distribution of material depicting sex performed by a child and indecent solicitation with the intent that one of specific sex crimes occur. I mean, it's very different to find potentially innocent conduct in situations like that versus in this case. So if there are no other questions, we would just ask this Court find this statute unconstitutional and vacate Mr. Farmer's conviction. Thank you. Thank you very much for the arguments, the briefs. This case will be taken under advisement and this Court will be adjourned.